March 9, 1908.

———O———

## No. 4385.

Court of Appeal, Parish of Orleans.

## ADAMS BECK & COMPANY, LTD. VS. JOHN BORN.

The creditor of a deceased debtor, who consents to the presumptive

heir taking possession of and disposing of the succession property without authority, and is himself the beneficiary thereby, is estopped from holding the heir responsible as an intermeddler.

Appeal from Civil District Court, Division A.

Boatner & Manion, for Plaintiff and Appellant.

John B. Fisher, for Defendant and Appellee.

MOORE, J. This was a suit by a creditor of the deceased mother of defendant by which it was sought to hold the latter responsible for the debt on the ground that defendant had unconditionally accepted the Succession and had thereby rendered himself responsible for the debts as a consequence of his taking possession of the Succession effects without authority so to do, selling same and paying some of the debts. The answer is to the effect that all of defendant's acts in the matter were done under the advice, direction and by the consent of plaintiff company and for its sole benefit and that in fact the plaintiff corporation was the sole beneficiary thereby:

There was judgment rejecting plaintiff's demand and plaintiff appeals. The facts are that defendant's mother was a vendor of poultry in a public market of this city. She died owing plaintiffs $288.61 for poultry purchased of them, and her landlord for rent. When notified of her death, her son, the defendant, who resided elsewhere, hastened to her home and there met the representative of plaintiff company. It was soon discovered by the parties that the entire effects of the estate consisted of a few pieces of cheap furniture, some wearing apparel, a coop of poultry and a tin box, which was supposed to contain money. Thereupon defendant suggested to plaintiff's representative that plaintiff take the lot of poultry and credit the account therefor; that defendant dispose of the remaining effects, apply its proceeds, together with such money as may be found, to the payment of the funeral expenses and that out of the surplus, if any, plaintiff would be paid. This was acquiesced in by plaintiff's agent, and accordingly, the latter got the poultry amounting to $69.40; the defendant gave Christian burial to his mother; sold the effects, realizing $28.00 therefor; paid $179.50 for funeral expenses and found no cash belonging to the estate. When it was thus discovered that under this arrange-

ment the plaintiff could not be paid, suit followed for the balance due on the account after crediting it with the sum of $69.40 as aforesaid. Under these facts it is clear that the plaintiff cannot recover. We find in the record the able written opinion of our esteemed brother of the District Court and we adopt it as ours. It is as follows:

"I think the plaintiffs are equitably estopped from the action to hold the defendant for taking charge of his mother's effects left at her death.

"She left a coop of chickens bought from plaintiffs the day before she died.

"Her furniture brought $28 at auction. Her wearing apparel was of no commercial value. The two boilers, or vessels, used for heating water to scald chickens, were attached to the rented realty, and were of small value. She left no money or credits, save one of doubtful character, and a coop of chickens not paid for. She was an old lady of seventy years, who lived by buying and selling fowls in the market. The defendant, her son, lived at his own home. An old colored woman and a young man, who helped in the business, lived in the house with her. She died suddenly, and had been dead an hour and a half when defendant, her son, heard of it, and reached her room to find it full of people, white and colored, who had gathered in.

"Defendant had her remains removed to his home for burial the night of her death, and soon after he reached her home, and then returned, looked through her armoir, and found nothing, except her clothing, a box, where she kept the money, which was open and with the key in the lock, and some small change in a sack or parcel. He then closed and fastened the house, and did not return until after the funeral. He thought there ought to be money, and he engaged detectives, but they found nothing.

"On the other hand, two months rent was due the landlord. Defendant saw him, and he approved defendant's plan of selling the furniture and petty effects left. He saw plaintiffs, and suggested that they retake the coop of chickens, not paid for, credit the account, and said, if anything was left after funeral expenses, he would pay it to them. They acquiesced, and took the chickens and credited the account. The funeral expenses,

113

$179.50, were paid by the small amount realized from sales of the furniture, $28, and defendant paid the balance out of his own pocket.

"So, on the whole, without going into further detail, the result was plaintiffs got their coop of chickens, the landlord lost his rent, and acquiesced in his loss, the money realized (some $28) went to funeral expenses, and defendant paid the balance of the funeral bill of his mother from his own means. Nothing else remained of any value left by deceased. If the succession had been opened, with fixing of the seals, an inventory and appraisers, and the ordinary succession costs, it is safe that the costs would have eaten up all. If they had not, the undertaker and the landlord would have left nothing for plaintiffs. A judicial sale of the coop of chickens, under separate appraisement, with maintenance of the fowls meanwhile, would have been exceedingly regular and according to law, but certainly would have left them, if anything, on their special vendor's lien (leaving the landlord and funeral bill out, for the argument's sake), certainly less than they got when the defendant turned over the coop of chickens—an asset of the succession—to the plaintiff.

"The plaintiffs got the full benefit of this part of the estate property, and acquiesced in defendant's plan of selling extrajudicially, just as the landlord acquiesced, and for the good reason that there was nothing left that would justify the forms of the probate law and the resulting costs.

"No heir or creditor has complained, and the plaintiffs, who benefited by the defendant's conduct in dealing with the beggarly effects left by his mother, by taking part of the little that she left for their own use, are estopped in law and in conscience from questioning said conduct.

"With full knowledge, they acquiesced, and they were the only ones of all concerned who received benefit.

"The defendant benefited nothing; he appropriated nothing. On the contrary, he was out of pocket largely for the funeral expenses. He did the full measure of his duty to his dead mother, and in his dealing with the little that she left he had the acquiescence of plaintiffs and the landlord, who were her only creditors, after the undertaker.

"It is not shown that she left credits or a book of accounts;

114

only one account, particulars not shown.

"Defendant is under no obligation to plaintiffs to prosecute for that old and evidently small account. If they see profit in chasing that shadow as creditor, they can provoke administration, and do whatever may be needful.

"I have examined the authorities and considered the very able argument advanced by counsel for the plaintiffs, but the facts are irretrievably against them.

"Judgment for defendant against plaintiffs, dismissing the suit, and for his costs."

The judgment appealed from is affirmed.